UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MAYSON JOHN** | : | **DOCKET NO. 15-cv-1701** |
|     **D.O.C. # 376406** | | |
| **VERSUS** | : | **JUDGE MINALDI** |
| **IVY J. WOODS ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is the *pro se* civil rights complaint filed *in forma pauperis* by plaintiff Mayson John ("John"). At the time of filing John was a pretrial detainee housed at Jefferson Davis Parish Jail ("JDPJ") in Jennings, Louisiana. He was subsequently transferred to Concordia Parish Correctional Facility in Ferriday, Louisiana.

As defendants, John names: Jefferson Davis Parish Sheriff Ivy J. Woods; JDPJ Warden Dustin Locke; JDPJ Assistant Warden Gerald Cox; JDPJ Officers Charles Coker, Jody Thibedeaux, Mark Foster, Virgle Turner, Christopher Brown, Craig Daigle, and Kalob Schexnayder; and Drs. David Hardy, JDPJ Physician; and Richard Edwards, JDPJ Physicians.[1]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that this action be **DISMISSED, IN PART, WITH PREJUDICE.**

---

[1] Via separate Memorandum Order, the undersigned is ordering the service of John's claims against defendants Cox, Hardy, and Edwards.

# I.
## BACKGROUND

John states that he arrived at JDPJ on October 31, 2013, as a pretrial detainee awaiting trial on a sex offense. Doc. 1, pp. 5–6. In his complaint, John alleges multiple violations of his constitutional rights by the named defendants. He claims that he was denied proper medical care as it took three and a half to four months from his arrival at JDPJ to get his anti-depressant medication. *Id.* at 5. He then complains that defendant Hardy changed his prescription, which caused nose bleeds requiring him to get off of the medication. *Id.* at 5, 10. John also claims that when he arrived at JDPJ, he notified personnel that he had problems with his teeth but that many of the defendants (Locke, Coker, Thibedeaux, Foster, Schexnayder, Brown, Hardy, Edwards, and Daigle) refused to give him medication to treat these issues and the associated pain. *Id.* at 5, 7–11. He notes that he was sent to the hospital for pain but contends that JDPJ did not follow the soft food diet that was ordered for him. *Id.* at 5. John states that after Hardy was fired in August 2014, defendant Edwards took him off of his medications for seven months. *Id.* at 11.

John further alleges that he was in protective custody because of his sex offense charge but that, as a result of racial profiling, he was removed from protective custody and placed in a cell where he was one of two white men. *Id.* at 6. He claims that defendant Turner told him that it was Turner that put him "back there to be beat up [because] of my charge [because] he didn't get a job [with] my dad . . . ." *Id.* at 9. John also alleges that despite his status as a pretrial detainee, Turner told everyone that he was already guilty of the sex offense charge, causing people to give him a hard time and want to fight with him. *Id.*

John contends that defendants Locke and Cox discriminated against him as Locke told him that as a sex offender he could not get a job on the hall or as a trustee and Cox told him that he "had too much of a mouth" to get such a job. *Id.* at 6–7. John claims that the actions were an act of discrimination as other sex offenders had such jobs, and another inmate who had recently been fired for one of these jobs for

being "too mouthy" was subsequently rehired. *Id.* He also alleges discrimination by claiming that his cell is the only one that has a ratings block on the television, that defendant Coker slammed a door in his face and would not give him requested Bible study material, and that defendant Brown would put him in the tank for two weeks after the two got in an argument, while John alleges he would not punish other inmates in the same manner. *Id.* at 6, 8, 10.

In addition, John claims that he was the victim of excessive force by defendant Cox and assault by defendant Turner following a May 31, 2014, shakedown of his cell. *Id.* at 3, 6. He states that during the shakedown his cellmate threw pills on top of his [John's] ladder. *Id.* at 6–7. At some point during the incident, John alleges that Turner led him out of his cell. *Id.* at 3. While John was attempting to tell defendant Cox about his cellmate's actions, he and Cox got into an argument and Cox sprayed him with mace, grabbed him by the neck, and slammed him on the ground. *Id.* He complains that his glasses broke during the altercation and that the defendants refused to pay for a new pair. *Id.* at 7. He states that Cox later apologized but then tried to cover up the incident. *Id*. John also states that he told defendant Woods that he wanted to file charges regarding the altercation but that Woods told him that he would be in the drunk tank for the remainder of his time at JDPJ if he pressed charges. *Id.* at 3.

John alleges that defendant Thibedeaux retaliated against him by calling him out on "stupid stuff" after he filed several grievances against Thibedeaux. *Id.* at 9. He complains that Thibedeaux and Schexnayder were on duty when he got a black eye from a fight but that neither defendant timely dealt with the incident. *Id.* at 8, 10.

John also advances the following conditions of confinement claims: lack of handicap accessible shower or toilet, untimely pill calls, lights were never dimmed, fans were rarely cleaned, bug problems, lack of outside recreation, inadequate legal material, failure to segregate inmates resulting in conflicts between them, and lack of a doctor on call twenty-four hours a day, seven days a week. *Id.* at 10, 13.

On April 5, 2016, this court issued a memorandum order [doc. 12] instructing John to amend his complaint. The memorandum order advised John that his claims for excessive force, denial of medical care, retaliation, discrimination, verbal abuse and harassment, access to the courts/law library, defamation, and conditions of confinement were insufficient.

John filed an amended complaint on June 2, 2016. Doc. 16. His amended complaint did little to cure the majority of the deficiencies noted above. However, he did provide some additional information on his medical care claims against defendants Hardy and Edwards as well as his excessive force claim against defendant Cox. *Id.*

## II.
### LAW AND ANALYSIS

### A. *Frivolity Review*

John has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Under 28 U.S.C. § 1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley*, 157 F.3d at 1025 (failure to state a claim).

### B. *42 U.S.C. § 1983*

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United

States. 42 U.S.C. § 1983. Thus, an initial inquiry in a lawsuit filed under § 1983 is whether a plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under § 1983. In order to hold defendants liable under 42 U.S.C. § 1983, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *West v. Atkins,* 108 S.Ct. 2250, 2254–55 (1988).

### C. *Retaliation*

It is well established that prison officials may not retaliate against an inmate because that inmate exercised his right to access the courts or to complain to a supervisor about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, as the Fifth Circuit has repeatedly emphasized, claims of retaliation from prison inmates must be regarded with skepticism, lest the inmates "inappropriately insulate themselves from disciplinary action by drawing a shield of retaliation around [themselves] . . . ." *Id.* at 1166. To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (quoting *Woods*, 60 F.3d at 1166). "The inmate must allege more than his personal belief that he is the victim of retaliation. . . . [He] must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999) (internal citations omitted).

John fails to offer anything more than conclusory allegations in support of this claim. As previously stated, conclusory allegations of retaliatory motive or intent are not sufficient to evidence a pattern of

retaliation or motive for same. John's allegations of retaliation are insufficient to state a claim under this cause of action and should be dismissed.

### D. Discrimination

The Equal Protection Clause requires that people similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 105 S.Ct. 3249, 3254 (1985). To succeed on an equal protection claim, a plaintiff must show that he suffered "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 862 (5th Cir. 2004). John's vague allegations that other inmates received better treatment fails to satisfy this standard. Accordingly, he has not adequately pleaded an Equal Protection Clause violation.

### E. Verbal Abuse and Harassment/Defamation

John's attempts to bring verbal abuse and harassment claims fail to raise a federal constitutional claim. The "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) (quotations and alterations omitted).

Likewise, John's claims that he was defamed by the defendants must fail. The Fifth Circuit points out that "[d]amage to one's reputation alone, apart from some more tangible interest such as employment, does not implicate any 'property' or 'liberty' interest sufficient to invoke the [D]ue [P]rocess [C]lause. More must be involved than defamation to establish a § 1983 claim under the [F]ourteenth [A]mendment." *Thomas v. Kippermann*, 846 F.2d 1009, 1010 (5th Cir. 1988). "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 111 S.Ct. 1789, 1794 (1991); s*ee also Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir. 2001) (holding that allegations of slander by a former prisoner, resulting in public humiliation, scorn, and ridicule, did not

state a claim under 42 U.S.C. § 1983). John's allegations in this regard fail to state a claim under 42 U.S.C. § 1983 and should be dismissed.

### F. Access to the Courts/Law Library

John claims that JDPJ does not have adequate legal materials. Doc. 1, p. 13. This claim equates to a denial of access to the courts. To sustain a claim for denial of access to court, he must set forth facts showing that he was denied access and that he sustained an "actual injury." *Lewis v. Casey*, 116 S.Ct. 2174, 2179–81 (1996). An inmate's right to meaningful access to the courts entails access to adequate law libraries; however, limitations may be placed on library access so long as the regulations are reasonable related to legitimate penological interests. *McDonald v. Steward*, 132 F. 3d. 225, 230–31 (5th Cir. 1998). John's vague allegations certainly do not rise to the level of a constitutional violation and should be dismissed.

### G. General Conditions of Confinement

John's challenge to the constitutionality of his conditions of confinement is determined by application of the test announced in *Bell v. Wolfish*, 99 S.Ct. 1861 (1979). The test for such claims asks "whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Id.* at 1873. In determining whether a particular condition amounts to punishment, the court considers whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Harris v. Angelina County*, 31 F.3d 331, 334 (5th Cir. 1994) (quoting *Bell*, 99 S.Ct. at 1873). Courts may infer a punitive purpose if the challenged condition is not "reasonably related to a legitimate governmental objective." *Hamilton v. Lyons*, 74 F.3d 99, 104 (5th Cir. 1996) (quoting *Bell*, 99 S.Ct. at 1874). Even if evidence of such a purpose is established, however, there exists "a *de minimis* level of imposition with which the Constitution is not concerned." *Id.* at 106 (quoting *Bell*, 99 S.Ct. at 1874 n. 21).

Although John's rights flow from the Fourteenth Amendment rather than the Eighth Amendment, the same standards apply under both amendments when considering issues of basic human needs. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Accordingly, a detainee alleging a constitutionally inadequate condition of confinement that denies him of a basic human need must show that (1) the condition posed a risk of harm that was "objectively, sufficiently serious," and that (2) the prison official acted with deliberate indifference to the detainee's health or safety. *Farmer v. Brennan*, 114 S.Ct. 1970, 1977 (1994) (internal quotations omitted). John does not allege that he has suffered any physical injury or had any illness exacerbated by the conditions in the facility, nor does he allege that the defendants have acted with any punitive purpose to create or maintain the allegedly defective conditions. The conditions complained of are *de minimis* and fail to implicate a federal constitutional right.

### H. Medical Care

John's medical care claims against defendants Dr. David Hardy and Dr. Richard Edwards survive review and should be served. However, his claim that he was denied medical care by any of the other defendants fails. Although John was a pretrial detainee at the time of the events in question, the jurisprudence recognizes "no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs*, 254 F.3d at 548. "A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety. . . . [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 464 (5th Cir. 2015) (internal quotations and citations omitted). "[T]he failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th

Cir. 2001) (internal quotations and alterations omitted). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur*, 245 F.3d 447, 459 (5th Cir. 2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the court stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.

John's broad statements that defendants Locke, Coker, Thibedeaux, Foster, Schexnayder, Brown, and Daigle failed to provide adequate medical treatment simply do not support a claim of deliberate indifference to John's serious medical needs.

### I. *Excessive Force*

John's claim of excessive use of force against defendant Gerald Cox survives review and should be served.

### III.
#### CONCLUSION

For reasons stated,

**IT IS RECOMMENDED** that John's medical care claims against defendants Dr. David Hardy and Dr. Richard Edwards as well as his claim of excessive use of force against defendant Gerald Cox be served in accordance with the separate memorandum order issued in this matter.

**IT IS ALSO RECOMMENDED** that all other claims contained in John's complaint, including those against defendants Ivy J. Woods; Dustin Locke; Charles Coker, Jody Thibedeaux, Mark Foster,

Virgle Turner, Christopher Brown, Craig Daigle, and Kalob Schexnayder **be DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. **Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers this 8th day of August, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE