UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

MAYSON JOHN                           :              DOCKET NO. 15-cv-1701
    D.O.C. # 376406

VERSUS                                :              JUDGE MINALDI

IVY J. WOODS ET AL.                   :              MAGISTRATE JUDGE KAY

REPORT AND RECOMMENDATION

      Before the court is a Motion to Dismiss [doc. 29] pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure, filed by defendant Dr. Richard Edwards III ("Edwards") in response to
the original and amended *pro se* civil rights complaints [docs. 1, 16] brought under 42 U.S.C. §
1983 by petitioner Mayson John ("John"). For the reasons provided below, **IT IS
RECOMMENDED** that the motion be **GRANTED** and that all claims against Edwards be
**DISMISSED WITHOUT PREJUDICE**.

I.
BACKGROUND

      At the time his original complaint was filed, John was an inmate on pretrial detention at
the Jefferson Davis Parish Jail ("JDPJ") in Jennings, Louisiana.[1] Doc. 1, pp. 2, 9. He complained
of civil rights violations under 42 U.S.C. § 1983 by various JDPJ personnel, including Edwards,
whom he alleged was a physician at JDPJ. Doc. 1.

---

[1] He was subsequently transferred to Concordia Parish Correctional Facility in Ferriday, Louisiana. Doc. 7. He
indicates in his response to the instant motion that he "may be going home soon" and requests change of address to a
private residence. Doc. 31, p. 4.

After conducting a frivolity review of the complaint, this court directed John to amend and allege additional facts in support of many of his claims, including those related to his medical care. Doc. 12, pp. 6–7. John complied, the claims against Edwards survived a second frivolity review, and we ordered service upon Edwards and other defendants. Docs. 16, 18, 19.

In his original complaint John alleged that Edwards took over as JDPJ physician after the previous physician was dismissed in August 2014. Doc. 1, p. 11. John stated that, under the care of the previous JDPJ physician, he was prescribed medication for depression and that he was having issues with side effects from this medication. *Id.* at 10. He claimed that "upon Dr. Edwards coming in they took me off my meds and it [took] 7 month[s] and to threaten to sue to get back on them." *Id.* at 11.

In his amended complaint John also contends that Edwards and others violated his civil rights while treating John for cracked wisdom teeth and related pain. Doc. 16, p. 7. He claims that Edwards determined that two of his teeth "need[ed] to be removed ASAP and wasn't removed until almost a year later." *Id.* He alleges that JDPJ personnel did not follow the pain management protocol or dietary restrictions prescribed for management of his dental problems, though it is unclear whether Edwards or another health care provider made these recommendations. *Id.* John also complained generally that inmates "never see the doctor," that a nurse only visits once a week, that there is no one on 24 hour call, and that the doctor or nurse makes a diagnosis "without knowing what's wrong." *Id.* at 10.

Edwards now brings the instant motion to dismiss, alleging that the claims against him arise under a theory of medical malpractice and are therefore premature due to John's failure to present them to a medical review panel. Doc. 29, att. 1. John has responded, indicating that others

may be responsible for some of his claims filed against Edwards and complaining that he has no way of accessing a medical review panel while incarcerated. Doc. 31.

## II.
### LEGAL STANDARDS

#### A.  *Rule 12(b)(6)*

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1950. We take as true all factual allegations in the complaint but are not bound by the plaintiff's legal allegations. *Id.* at 1949–50. Accordingly, we are not required to give any weight to "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrers v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (internal quotations omitted).

#### B.  *Section 1983*

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, an initial inquiry in a lawsuit filed under § 1983 is whether a plaintiff has alleged that his constitutional rights have been violated. If no constitutional

violation has been alleged, there is no cognizable claim under § 1983. In order to hold the defendants liable under 42 U.S.C. § 1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law; that is, that the defendant was a state actor. *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348–49 (5th Cir. 1985).

Although John was a pretrial detainee at the time of the events in question, the jurisprudence recognizes "no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs*, 254 F.3d at 548. "A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety. . . . [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 464 (5th Cir. 2015) (internal quotations and citations omitted).  "[T]he failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotations and alterations omitted). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur*, 245 F.3d 447, 459 (5th Cir. 2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does

not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the court stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.

### C. *Louisiana Medical Malpractice Act*

The Louisiana Medical Malpractice Act ("LMMA"), LA. REV. STAT. § 40:1231.1 *et seq.*, governs claims of malpractice against qualified health care providers. Under the LMMA, malpractice is defined as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient . . . ." LA. REV. STAT. § 40:1231.1(13). Health care providers include physicians. *Id.* at § 1231.1(10). Plaintiffs must submit malpractice claims to a medical review panel prior to filing suit. *Id.* at § 40:1231.8. This requirement applies to malpractice claims brought within § 1983 actions. *See, e.g.*, *Ricks v. City of Alexandria*, 2012 WL 3255122, *5–*6 (W.D. La. Jun. 25, 2012); *Ford v. Cain*, 2016 WL 923111, *2 (M.D. La. Mar. 10, 2016) (dismissing malpractice claims within § 1983 actions as premature under LMMA); *cf. Thomas v. James*, 809 F.Supp. 448 (W.D. La. 1993) (In a § 1983 action, plaintiff was not required to present his claim of *intentional* mistreatment by physician to medical review panel but would be required to if asserting a claim of negligence). Premature medical malpractice suits falling under the LMMA are subject to dismissal. *Adams v. Foti*, 2004 WL 241859, *4 (E.D. La. Feb. 5, 2004).

### III.
### ANALYSIS

Although this action is brought under § 1983, John's allegations against Edwards state, at best, a claim of negligence under state law. His claim about the time period in which he was taken off of medication for his depression does not allege any awareness on Edwards' part of facts giving

rise to an inference of serious risk of substantial harm. Moreover, John only alleges that he was without appropriate medication for a time. He does not allege that a risk of harm was created thereby.

As for the claims related to his dental care, Edwards' only role comes as the potential author of treatment recommendations that were not followed by others. John never alleges that Edwards failed to provide adequate treatment or otherwise displayed indifference to his serious medical needs. Accordingly, as Edwards points out, John's allegations against him are insufficient to support a constitutional violation and fail to state a claim on which relief can be granted under § 1983.

In addition to not rising to the level of a constitutional violation, John's allegations do not indicate any intentional wrongdoing by Edwards. To the extent that John may be trying to state a claim of negligence against Edwards, Edwards contends that these claims would arise under the Louisiana Medical Malpractice Act and therefore be barred due to John's failure to submit it to a medical review panel.

Here there is no dispute that Edwards is a physician and that any claims brought against him are based on the treatment he rendered to John. Accordingly, John's allegations against him fall under the LMMA.[2] John admits that he has not requested a medical review panel and offers his incarceration and ignorance of the law as excuse. However, he cites no authority supporting an

---

[2] The Louisiana Malpractice Liability for State Services Act ("LMLSSA"), LA. REV. STAT. § 40:1299.39 *et seq.*, governs many malpractice claims arising from care rendered to Louisiana inmates. However, the LMLSSA applies only to "state health care providers," which excludes "any individual acting in a professional capacity in providing health care services not by or on behalf of the state." LA. REV. STAT. § 40:1237.1(b). The LMLSSA also excludes political subdivisions of the state and any health care facility of same from the definition of "state health care provider." *Id.* Accordingly, physicians providing medical services at parish facilities are covered by the LMMA rather than the LMLSSA. *Vanderhoff*, 853 So.2d at 754–55.

John's original and amended complaints name Edwards as a doctor employed at the Jefferson Davis Parish Jail. Doc. 1, p. 4; doc. 16, p. 5. Therefore malpractice claims against Edwards would be covered by the LMMA and not the LMLSSA.

exemption from the review panel requirement on either basis.[3] Meanwhile, authority from state and federal courts supports holding inmates to the same review panel requirements as the general population in actions covered by the LMMA. *See, e.g.*, *Vanderhoff v. Beary*, 853 So.2d 752, 755 (La. Ct. App. 4th Cir. 2003); *Adams*, 2004 WL 241859 at *3–*4. As John has not met this requirement, his claims against Edwards are premature and should be dismissed without prejudice.

## IV.
### CONCLUSION

For reasons stated,

**IT IS RECOMMENDED** that the Motion to Dismiss [doc. 29] be **GRANTED** and that all claims against defendant Edwards be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

---

[3] There are different requirements for inmates, as opposed to the general population, in actions covered by the LMLSSA. *See, e.g., Walker v. Appurao*, 29 So.3d 575, 576–77 (La. Ct. App. 1st Cir. 2009); *Yen v. Avoyelles Parish Police Jury*, 858 So.2d 786, 788–90 (La. Ct. App. 3d Cir. 2003). However, the LMLSSA specifically applies the review panel requirement to claims "other than [those] subject to administrative review in a correctional facility" and provides that "[t]he medical malpractice claims of prisoners relating to health care rendered in a correctional facility and arising under this Part shall be submitted to correctional administrative review procedures . . . ." La. Rev. Stat. § 40:1237.2(A)(1)(a); *id.* at § 40:1237.1(E)(1). The LMMA makes no such distinction.

THUS DONE this 22nd day of November, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE